Amber L. Schubert (No. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
aschubert@sjk.law

Fletch Trammell (TX Bar No. 24042053)
*Pro hac vice* forthcoming
**TRAMMELL PC**
3262 Westheimer, #423
Houston, TX 77098
Tel: (800) 405-1740
Fax: (800) 532-0992
fletch@trammellpc.com

*Counsel for Plaintiffs and the Proposed Class*
*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL TUTHILL, GREGORY URRUTIA, and TED LUKOWSKI, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs,*<br><br>     v.<br><br>MNTN, Inc., a Delaware corporation,<br><br>     *Defendant.* | Case No.:  **'26CV2600 GPC MMP**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>Cal. Penal Code § 631<br>Cal. Penal Code § 638.51<br>Cal. Penal Code § 632<br>Cal. Penal Code § 502<br>California Constitution Art. 1, § 1<br>Cal. Bus. & Prof. Code § 17200, *et seq.*<br>Intrusion Upon Seclusion<br><br>**DEMAND FOR JURY TRIAL** |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

1

Plaintiffs Crystal Tuthill, Gregory Urrutia, and Ted Lukowski ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint and Demand for Jury Trial against Defendant MNTN, Inc. ("Defendant" or "MNTN") for surreptitiously and illegally collecting consumers' web browsing activities, and allege as follows:

## **NATURE OF THE ACTION**

1.     This lawsuit challenges MNTN's pervasive data surveillance of California residents' internet activities without their knowledge or consent, including the surveillance of sensitive health-related communications.

2.     MNTN is an advertising technology company that helps businesses run and measure the effectiveness of television advertisements delivered through internet-based streaming services (commonly known as "Connected TV" or "CTV"), such as those viewed on smart TVs, Roku, Apple TV, and similar devices. To measure whether a streaming TV ad causes a viewer to take action, MNTN embeds invisible tracking code on thousands of its advertising clients' websites. This tracking code secretly intercepts users' communications with those websites in real time, including their page views, browsing activity, product interactions, and conversion events, and links those communications back to the television ads MNTN delivered to the user's household.

3.     MNTN deploys tracking and conversion pixels that collect users' IP addresses, device information, browsing data, inferred location, Google Analytics user IDs, and persistent cookie identifiers, including a unique identifier labeled "guid" that follows users across different websites and browsing sessions. This enables MNTN to build detailed household-level identity profiles on millions of consumers, tracking what pages they visit, what products they view, and what sensitive information they research, all to support MNTN's CTV advertising campaigns.

4.     MNTN's surreptitious interception of users' communications violates California's wiretapping laws. MNTN's systematic collection of IP addresses and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

routing information without a court order violates California's pen register statute. And MNTN's unauthorized access to users' devices to extract personal data violates multiple other privacy protections under California law.

5. Plaintiffs bring this action on behalf of millions of Californians whose privacy has been invaded by MNTN's unlawful tracking, seeking damages, restitution, and injunctive relief to stop these violations.

## PARTIES

6. Plaintiff Crystal Tuthill is an individual and citizen of the State of California, residing in Moreno Valley, California.

7. Plaintiff Gregory Urrutia is an individual and citizen of the State of California, residing in Copperopolis, California.

8. Plaintiff Ted Lukowski is an individual and citizen of the State of California, residing in Westminster, California.

9. Defendant MNTN, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from the Defendant.

11. Defendant is subject to specific personal jurisdiction in California, including in this District, because Defendant purposefully directed its data-collection and monetization activities toward California residents. These contacts with California are deliberate, not incidental. As demonstrated herein, MNTN processes users' IP addresses to derive California-specific location data, including city, state, and inferred geographic coordinates. MNTN records this California location alongside users' browsing activity and persistent identifiers, and uses it to enhance the commercial value of its media measurement and advertising services and to determine which

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

3

California households are eligible to receive specific Connected TV ads. Each such identification of a California user constitutes a purposeful contact with California.

12.    Upon information and belief, MNTN derives direct financial benefit from identifying and targeting California users. Advertisers pay for the ability to reach specific audiences in defined geographic markets and California, the nation's most populous state, is among the most valuable markets. When MNTN identifies a user as a California resident through IP-based geolocation and includes that household in its identity graph for CTV targeting, attribution,[1] and measurement, it monetizes that California-specific information. MNTN's California contacts thus generate revenue, not merely incidental data.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims, including those relating to Crystal Tuthill, Gregory Urrutia, and Ted Lukowski, occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A.    MNTN's Business Model Depends on Secretly Collecting and Selling User Data

14.    MNTN operates as an advertising platform that helps businesses run television ads on internet-based streaming services. It is responsible for the ads viewers see when watching content on smart TVs, Roku, Apple TV, and similar streaming devices. Unlike traditional television advertising, which targets broad audiences, MNTN's platform allows advertisers to target specific households and then track whether those households subsequently visit the advertiser's website. MNTN refers to this as its "Performance TV" platform because it promises

---

[1] Attribution is the process of identifying which marketing touchpoints (e.g., clicks or page views) lead to desired outcomes for advertisers (e.g., sales or app downloads and installations). *See* Amazon, *What is Marketing Attribution? A beginner's guide*, https://advertising.amazon.com/library/guides/marketing-attribution#1 (last accessed March 30, 2026).

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

4

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

advertisers measurable, performance-based results from their streaming TV ad spend.

15.    MNTN's platform operates within a broader digital advertising infrastructure that connects two sides of a market: advertisers, who seek to reach audiences, and publishers, who own digital properties (such as websites or streaming platforms) and seek to monetize them. Advertisers use demand-side platforms to automate the purchase of ad space, while publishers use supply-side platforms to sell their available ad space. MNTN operates on the advertiser side of this infrastructure. Its platform allows advertisers to define their target audiences, budgets, and campaign goals, and then automates the purchase and delivery of streaming TV ad space on their behalf.

16.    To assess whether a streaming TV ad actually leads to a desired outcome such as a website visit or purchase (known as a "conversion"), advertisers rely on "conversion tracking," which measures whether users complete specific actions after seeing an ad. Conversions are typically measured using tracking pixels or scripts embedded in advertiser websites and designed to capture event data in real time.

17.    What distinguishes MNTN from a conventional ad-buying platform is the scale and intrusiveness of its infrastructure. MNTN uses tracking pixels installed on advertisers' websites, combined with a household-level identity graph,[2] to determine whether streaming TV ad exposures lead to subsequent website visits and conversions, and to optimize campaigns based on those results. It is this pervasive and intrusive tracking infrastructure, deployed across thousands of advertiser

---

[2] A "household-level identity graph" is a database that maps the relationship between individual users and devices (e.g., mobile devices, smart TVs, desktop computers), and distinguishing user identifiers (e.g., emails and cookies) within a single home. See MNTN, Understand MNTN's Identity Graph, https://help.mountain.com/en/articles/8107916-understand-mntn-s-identity-graph (last accessed March 27, 2026).

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

websites and collecting vast quantities of personal data to link CTV ad exposure to subsequent user activity, that gives rise to the claims in this action.

18.     MNTN's core revenue-generating activities depend on the collection and analysis of user interactions with advertiser websites following ad exposure. MNTN's Form 10-Q for the period ending June 30, 2025 discloses that its business "depends on [its] ability to collect, use, and disclose data … to deliver and measure the effectiveness of ads."[3] The filing admits that MNTN collects and uses a wide range of sensitive and personal user data, including advertising identifiers, IP addresses, location data, hashed email addresses, browser and device information, and online browsing behavior—all of which is sourced from advertiser-implemented pixels, CRM data,[4] and third-party data providers such as LiveRamp.

19.     MNTN SEC filings also state that it aggregates and analyzes this data to support the pricing, placement, targeting, and scheduling of ads, and emphasizes that its ability to target and measure the effectiveness of ads is critical to the value of its services.[5] The company expressly warns that restrictions on its or its customers' ability to collect or use data, including through pixels or similar technologies, could significantly diminish the value of its platform, resulting in customer attrition, revenue loss, and adverse effects to its business.[6]

**B.      MNTN Collects Private User Data Without User's Knowledge or Consent**

20.     MNTN recommends that advertisers implement tracking and conversion pixels on their websites when using its Performance TV platform. These

---

[3] MNTN, Inc., Quarterly Report (Form 10-Q for period ended June 30, 2025) (Aug. 11, 2025), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001891027/54127b9d-dac6-4fca-977f-9f9828a3aced.pdf at p. 50 (last accessed March 10, 2026).

[4] "CRM data" refers to advertiser databases that collect and house information about customers, prospective customers, and interactions with customers, including contact information, purchase history, and behavioral data. See Oracle, What is CRM? The complete CRM guide, https://www.oracle.com/cx/what-is-crm/ (last accessed March 30, 2026).

[5] Id., at p. 51.

[6] Id., at p. 50.

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

pixels are the foundation for MNTN's tracking, profiling, and user identification across websites and over time.

21. The MNTN tracking pixel is placed site-wide on advertiser properties and is triggered automatically when a webpage is loaded by a user, enabling the collection of page-level interaction data and identifier signals associated with the user and their site visits. The MNTN conversion pixel is deployed on designated conversion pages[7] and is triggered when a pre-defined user action occurs, such as a purchase or sign-up, transmitting event-level data used to attribute conversions back to Connected TV advertising campaigns.

22. When a user uses an internet browser to access a webpage containing an MNTN tracking pixel, MNTN's code automatically begins to work behind the scenes while the user engages with the website. As the user interacts with the website, loading pages, viewing content, browsing products, and completing actions, MNTN's tracking pixel simultaneously reads and captures information that the user only intended to convey to the website that the user is using. This information includes the URLs the user visited, the names and contents of pages viewed, product interactions, and conversion events. This interception occurs in real time, contemporaneously with the user's communications with the website, as the webpages load and as users navigate the site. MNTN's tracking pixel reads and captures these communications while they are in transit between the user and the website, not through after-the-fact processing or delayed reporting. MNTN does all this without the user's knowledge or consent.

23. The core persistent identifier used by MNTN is a cookie labeled "guid," which functions as a unique identifier associated with a specific browser or device. A cookie is a small text file that a web server instructs a browser to store on the user's

---

[7] A "conversion page" is a webpage that a user sees after completing an action valuable to the advertiser. See Google, Conversion Page, https://support.google.com/google-ads/answer/61132?hl=en (last accessed March 27, 2026).

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

device. Once stored, the cookie is automatically included in future communications with that server, allowing the server to recognize returning visitors. Unlike session-based identifiers that expire when a browser is closed, the guid cookie persists across browsing sessions, enabling MNTN to recognize returning users and link multiple visits to the same user environment over time. This persistence allows MNTN to associate post-ad website activity with prior CTV ad exposure and to support ongoing attribution, analytics, and performance measurement—again, without the user's knowledge or consent.

24. This persistent identifier infrastructure is a core technical mechanism by which MNTN collects and processes user data in connection with its Performance TV products and attribution services. When advertisers integrate MNTN's tracking infrastructure onto their websites, MNTN can set or access this persistent identifier within the user's browser. In this way, MNTN's tracking operates directly within advertiser environments, allowing MNTN to recognize users across multiple visits to advertiser websites without requiring users to interact directly with MNTN's own domains.

25. MNTN previously operated under the name "SteelHouse" and continues to operate domains such as steelhousemedia.com alongside mountain.com. Cookies set under both domains use the same persistent guid identifier.

**C.  MNTN's Trackers Follow and Record User Information and Habits Over Time**

26. MNTN's United States Regional Privacy Notice ("Notice") outlines the categories of personal information the company collects and processes for individuals residing in California and other states. According to the Notice, MNTN processes identifiers and online activity information, including: (1) IP addresses (from which it derives "city-level location" information); (2) cookie identifiers (including the persistent guid cookie); (3) mobile advertising identifiers; (4) hashed email addresses; (5) device and browser information; and (6) information about

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

users' interactions with websites and ads, including site visits, ad exposure, page URLs, product views, cart activity, conversion events, and other online activity.[8]

27.  MNTN's General Privacy Policy ("Privacy Policy") further confirms how user data flows to MNTN through its marketing services. According to the Privacy Policy, MNTN receives the advertising IDs, IP addresses, and hashed email addresses of its advertising customers' website visitors.[9] MNTN's SEC filings and technical documentation identify specific third-party data providers, such as LiveRamp, that pass this information and device identifiers directly to MNTN on a recurring basis.[10] MNTN receives this data without the user's consent or knowledge and uses it to enrich the household-level identity graphs MNTN creates for its advertising customers.

28.  An IP address is a unique numerical identifier that guides or routes communications across the internet. Often written as four sets of numbers separated by periods (e.g., 192.555.455.145), internet service providers assign unique IP addresses to networking devices such as modems or routers—in other words, each device gets its own IP address that helps information flow to and from the device as the user uses the device to access and interact with others on through the internet.

29.  The geolocation capability of IP addresses makes them extraordinarily valuable for digital advertising and tracking purposes. IP addresses can allow companies to target ads to users in specific geographic areas with over 95% accuracy. For example, businesses who are trying to reach specific demographics can target devices on college campuses by sending ads to IP addresses associated with college-wide Wi-Fi networks or associated with particular events where college students are

[8] MNTN, Inc., *United States Regional Privacy Notice* (last updated July 9, 2025), https://mountain.com/regional-privacy-notice (last accessed March 10, 2026).
[9] MNTN, Inc., *Privacy Policy* (last updated Jan. 31, 2025), https://mountain.com/privacy-policy (last accessed March 10, 2026).
[10] MNTN, Inc., Quarterly Report (Form 10-Q for period ended June 30, 2025) (Aug. 11, 2025), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001891027/54127b9d-dac6-4fca-977f-9f9828a3aced.pdf at p. 51 (last accessed March 10, 2026).

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

likely to be, such as job fairs or festivals. By using IP addresses to target specific households, businesses or events, MNTN can segment audiences by geography and provide location-based advertising insights to its clients.

30.    An IP address[11] constitutes "routing, addressing, or signaling information." It is "routing" or "signaling" information because it sends or directs the user's communication from the router in their home or workplace to the website they are communicating with, ensuring that the web content being accessed (whether that be websites, streaming content, emails, or other data) reaches the user correctly. It is "addressing" information because it determines the general geographic coordinates of the user who is accessing a website.

31.    When combined with a tracking tool like MNTN's guid cookie, IP addresses can be powerful tools for identifying specific individuals and tracking their browsing habits. A cookie assigns a stable identifier to a particular browser, while an IP address identifies the network connection used at that moment. When the same cookie identifier reappears from different IP addresses over the course of a day or week—for example: a residential IP address in the morning and evening, an employer's IP address during working hours, and a coffee shop's IP address during lunch—the company can associate those networks, and the locations they imply, with the same user. Over time, that pattern distinguishes that user from others who share the same network, and maps routine usage. Because cookies persist across IP address changes (mobile data, travel, dynamic addressing), they bridge sessions and provide continuity, while IP address information supplies location and network context. Used

---

[11] Generally, a user's IP address is private and is not exposed to the broader internet or third parties. However, the broader term "IP address" used in this complaint should be distinguished from the term "private IP address," which refers to a different, specific type of IP address used within internal networks, which is not routable on the public internet and does not reveal anything about a user's geolocation. Private IP addresses are not relevant to or otherwise addressed in this complaint.

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

10

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

together, cookies and IP addresses enable highly granular tracking of a browser's activity across sites and over time.

32.    MNTN's tracking pixel functions as a pen register, systematically recording users' IP addresses and routing information from thousands of advertiser websites as an undisclosed third party that the users have no knowledge of or relationship with.

33.    This data collection begins the moment a page loads, before users have any opportunity to review privacy policies or consent to tracking. The transmission to MNTN's servers occurs automatically in the background, invisible to users.

34.    MNTN's tracking pixel intercepts communications between users and website operators while the communications are in transit. As data travels between users' browsers and a website's servers, the tracking pixel intercepts and reads these transmissions in real-time, capturing page visits as they happen, product interactions, and conversion events as they occur. MNTN reads or attempts to read these communications by analyzing and interpreting the data streams mid-transmission, automatically identifying and classifying data types and values, extracting personal information, page URLs, and behavioral data while the communications are still traveling to their intended destination.

**D.    MNTN Turns the User Data into Detailed Graphs About Households and Habits**

35.    The data MNTN collects through its tracking pixels and from third-party data and identity providers does not simply sit in a database. MNTN uses it to build cross-device, household-level identity graphs and power an attribution methodology called "Verified Visits."

36.    According to MNTN's website, an identity graph is built by continuously collecting and aggregating device-level signals from multiple sources in a household, including data transmitted when MNTN's tracking pixel fires on advertiser websites (*e.g.,* device identifiers, IP addresses, Google Analytics user IDs,

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

and behavioral signals), identifiers passed by third-party partners such as LiveRamp on a recurring basis, and identifiers accessed through MNTN's technology when household devices receive CTV ad impressions.[12] These identifiers are matched to recognize and build connected household profiles. When a user's identifiers have been previously observed, MNTN synchronizes those identifiers with existing household records; if the identifiers are new, MNTN creates a new record linking the user's devices within the household.[13]

37.    MNTN's Verified Visits methodology then uses this identity graph to determine whether exposure to a CTV ad leads to subsequent visits to an advertiser's website. MNTN records CTV ad impressions and associates them with household-level identity signals, then it monitors post-ad website interactions on other devices within the same household during a defined attribution window. When a website visit is detected through MNTN's tracking pixel, the platform matches the visitor's signals against impression-level data to determine whether a qualifying visit occurred following ad exposure, and synchronizes attributed visit data with analytics platforms, including Google Analytics, for performance reporting.

38.    In other words, MNTN's tracking pixels do not merely record isolated page views. They feed a system that links an individual's browsing activity across multiple unrelated websites to their household's television viewing, using individuals' sensitive, personal information to create comprehensive cross-device profiles without the knowledge or consent of the individuals being profiled.

**E.    MNTN's Sells User Data for Financial Gain**

---

[12] An "ad impression," also known as an "ad view" is a marketing metric that measures the number of digital views an ad receives. See App's Flyer, Ad impression, https://www.appsflyer.com/glossary/ad-impression/ (last accessed March 30, 2026).

[13] MNTN, Inc., *Understand MNTN's Identity Graph*, MNTN Help Center, https://help.mountain.com/en/articles/8107916-understand-mntn-s-identity-graph (last accessed March 10, 2026).

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

39. MNTN does not collect user data for the benefit of the user. As MNTN acknowledges in its Form 10-Q, its business "depends on [its] ability to collect, use, and disclose data … to deliver and measure the effectiveness of ads."[14] MNTN monetizes user data by transforming it into targeting, attribution, and measurement capabilities that it can sell to advertisers through its Performance TV platform.

40. MNTN's platform enables advertisers to onboard customer data, including customer lists from CRM data, where those identifiers are processed for household-level matching and activation across CTV inventory. This allows advertisers to use sensitive, personal information to target known customers, suppress existing customers, or extend reach to additional households associated with similar audience characteristics. MNTN also offers access to pre-built audience segments sourced from third-party data and identity partners, including demographic attributes, inferred interests, purchase-related behaviors, and other behavioral characteristics. Data collected through MNTN's pixels—without user knowledge or consent—is used to build these audience segments and support targeting and retargeting capabilities.

41. MNTN generates approximately $280 million in annual revenue from these advertising services. The more granular and linkable the underlying user data, the more valuable MNTN's platform is to advertisers, and the more MNTN can charge for its services.

**F.     MNTN's Tracking Systems are Embedded into Advertiser and Partner Websites—Users Never Know They're Also Interacting with MNMT**

42. MNTN's tracking pixel technology is deployed across numerous websites, including those containing sensitive medical and health information. The following examples demonstrate how this tracking operates without user consent.

---

[14] MNTN, Inc., Quarterly Report (Form 10-Q for period ended June 30, 2025) (Aug. 11, 2025), https://d18rn0p25nwr6d.cloudfront.net/CIK-0001891027/54127b9d-dac6-4fca-977f-9f9828a3aced.pdf at p. 50 (last accessed March 10, 2026).

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

43. **American Lung Association (lung.org):** The American Lung Association is a nonprofit organization dedicated to improving lung health and preventing lung disease through education, advocacy, research, and support. Its website (lung.org) provides extensive health-related content and resources covering topics such as asthma, COPD, lung cancer, air quality, smoking cessation, and respiratory infections.

44. When a user visits lung.org, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains (including steelhousemedia.com and mountain.com). This transmission includes several pieces of sensitive, personal information: (1) the contents of the user's communications with the website, including the page URLs visited and the names of the pages viewed; (2) the user's IP address, from which MNTN derives the user's geographic location; and (3) the persistent guid cookie identifier associated with the user's browser, which allows MNTN to recognize the user across different websites and browsing sessions. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

45. For example, when users browse pages related to lung biopsies, lung cancer, or smoking cessation on lung.org, MNTN's tracking pixel captures those pages' complete URLs, which contain this sensitive health-related information, alongside the user's IP address and guid cookie. These transmissions link the user's sensitive health-related information and browsing to their persistent guid identifier, enabling MNTN to associate these health queries with any past or future browsing activity by the same user across numerous websites and with their household's CTV viewing activity.

46. **Feeding America (feedingamerica.org):** Feeding America is a nonprofit organization focused on ending hunger in the United States by supporting a nationwide network of food banks and community partners. Its website

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

(feedingamerica.org) offers information on hunger relief programs, resources for individuals and families in need, tools for finding local food assistance, and ways to get involved through volunteering or donations.

47. When a user visits feedingamerica.org, their sensitive personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page URLs visited and content viewed; (2) the user's IP address, from which MNTN derives the user's geographic location; and (3) the persistent guid cookie identifier associated with the user's browser. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

48. For example, when users search and view the pages for local food banks, explore senior food programs, or seek other assistance through feedingamerica.org, MNTN's tracking pixel captures the complete URLs of these pages which contain this sensitive, personal content and other browsing interactions alongside the user's IP address and guid cookie. This information, which may reveal that a user is experiencing food insecurity, is linked to the user's persistent identifier and used to support MNTN's cross-device attribution and household-level profiling.

49. **Audien Hearing (audienhearing.com):** Audien Hearing is a consumer hearing-technology company focused on providing hearing aids for adults with mild to moderate hearing loss. Its website (audienhearing.com) presents product information, pricing, and purchasing options for hearing devices, along with educational content explaining hearing loss and how hearing aids work.

50. When a user visits audienhearing.com, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

URLs visited and content viewed; (2) the user's IP address; and (3) the persistent guid cookie identifier. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

51.    For example, when users browse hearing specialist pages, view specific hearing aid products, MNTN's tracking pixel captures the complete URLs of these pages which contain this sensitive health content, alongside the user's IP address and guid cookie. These transmissions link the user's sensitive health-related browsing to their persistent guid identifier, enabling MNTN to associate these health queries with any past or future browsing activity by the same user across numerous websites and with their household's CTV viewing activity.

52.    **KQED (kqed.org):** KQED (kqed.org) is a public media organization serving Northern California that provides news, radio, podcasts, television programming, and digital content across a variety of topics, including local and national news, politics, arts and culture, science, and education.

53.    When a user visits kqed.org, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page URLs visited and content viewed; (2) the user's IP address; and (3) the persistent guid cookie identifier. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

54.    For example, when users read articles about mental health topics or political news on kqed.org, MNTN's tracking pixel captures the complete URLs of these pages which contain this content alongside the user's persistent identifiers, enabling MNTN to associate this media consumption with the user's household-level advertising profile.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

16

**G.     MNTN Never Alerts Users to Its Activities, and Never Asks for Consent to Collect and Share User Data**

55.     Throughout these data collection activities, MNTN operates without user consent. The data collection begins immediately when a webpage loads, before users can review any privacy policies or make choices about tracking. Users are never presented with the Privacy Policy, never agree to MNTN's data collection, and have no opportunity to opt out before their sensitive, personal data is transmitted to MNTN's servers. Most users remain entirely unaware that MNTN exists, much less that it maintains household-level profiles linking their website browsing activity to CTV ad exposure across multiple devices.

56.     The Privacy Policy confirms this lack of direct relationship with the individuals it tracks. The policy states that MNTN receives IP addresses, cookie IDs, and hashed email addresses from its advertiser-customers, and processes this information pursuant to written contracts with those customers rather than collecting it directly from end users. Users never reviewed MNTN's privacy policies, never agreed to a relationship with MNTN, and never authorized MNTN to collect and store their sensitive, personal information to build household-level identity profiles linking their CTV viewing to their website activity across devices.

## FACTS SPECIFIC TO PLAINTIFFS

57.     During the Class Period, each Plaintiff visited one or more websites that deployed MNTN's tracking pixel technology. Each Plaintiff's sensitive, personal information, including their IP address, device information, browsing activity, and persistent guide cookie identifier, was intercepted and collected by MNTN.

58.     Plaintiff Crystal Tuthill is a resident of Moreno Valley, California. She visited Feedingamerica.org within the past year using the Chrome browser on her phone. On this website, Crystal Tuthill browsed upcoming events. Crystal Tuthill does not have an account on this website and has not consented to any privacy policy that this website may have published. Crystal Tuthill did not know that MNTN was

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

collecting her personal information when she visited this website and never gave MNTN consent to intercept her communications and collect data about her.

59. Plaintiff Gregory Urrutia is a resident of Copperopolis, California. He visited Audienhearing.com within the past year using the Chrome browser on his phone. On this website, Gregory Urrutia browsed hearing aid products. Gregory Urrutia does not have an account on this website, has never subscribed to its newsletter, and has not consented to any privacy policy that these websites may have published. Gregory Urrutia did not know that MNTN was collecting his personal information when he visited this website and never gave MNTN consent to intercept his communications and collect data about him.

60. Plaintiff Ted Lukowski is a resident of Westminster, California. He visited Audienhearing.com within the past year using the Chrome browser on his laptop. On this website, Ted Lukowski browsed hearing aid products. Ted Lukowski does have an account on this website but has not consented to any privacy policy that this website may have published. Ted Lukowski did not know that MNTN was collecting his personal information when he visited this website and never gave MNTN consent to intercept his communications and collect data about him.

61. Upon information and belief, MNTN identified Plaintiffs and created household-level identity graphs and profiles containing their browsing activity, device identifiers, and advertising exposure, including based on their activity on the websites identified above.

62. Plaintiffs did not know, nor had reason to know, that unknown third-party MNTN surreptitiously collected information about their web activity (including their IP addresses) and created profiles linking their browsing activity to household-level CTV advertising exposure.

## CLASS ACTION ALLEGATIONS

63. **Class Definition**: Plaintiffs Crystal Tuthill, Gregory Urrutia, and Ted Lukowski bring this proposed class action pursuant to Federal Rules of Civil

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Procedure 23(a) and 23(b)(3) on behalf of themselves and a Class of others similarly situated, defined as follows:

> A. All California residents who visited a website with the MNTN tracking pixel embedded, including lung.org, feedingamerica.org, audienhearing.com, and kqed.org, or who otherwise had their personal information collected by MNTN through its tracking technology, during the Class Period.

64. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; (6) registered users of websites who were presented with and affirmatively assented to the website's Terms of Use and Privacy Policy during the registration process; and (7) the legal representatives, successors, and assigns of any such excluded persons.

65. **Numerosity**: The exact number of Class Members is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has surreptitiously collected and analyzed data from hundreds of thousands, if not millions, of consumers who fall into the definition of the Class. Class Members can be identified through Defendant's records.

66. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

A. Whether Defendant read, attempted to read, or learned the content of the communications made by Plaintiffs and the Class;

B. Whether Defendant's actions were willful;

C. Whether Defendant had the capability to and/or used Plaintiffs' and the Class Members' communications for their own purposes;

D. Whether Defendant's software is a pen register;

E. Whether Defendant accessed Plaintiffs' and the Class Members' computer systems; and

F. Whether Defendant obtained consent from Plaintiffs and Class Members.

67. **Typicality**: Plaintiffs' claims are typical of the claims of the Class Members in that Plaintiffs, like all Class Members, have been injured by Defendant's misconduct at issue.

68. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Class. Plaintiffs also have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

69. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

70.    Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION

### Violation of Cal. Penal Code §§ 630, *Et. Seq.*

### (On behalf of Plaintiffs and the Class)

71.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

72.    The California Legislature enacted the California Invasion of Privacy Act, CAL. PENAL CODE §§ 630, *et seq*. ("CIPA") "to protect the right of privacy of the people of this state." *Id.* § 630.

73.    To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

---

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

74.   Defendant's software, including its tracking pixel, is a "machine, instrument, contrivance…" used to collect communications.

75.   When Plaintiffs and Class Members communicate with websites by viewing pages, clicking links, browsing content, or completing conversion events, these interactions constitute communications containing content and meaning. This includes page URLs visited, webpage content accessed, product views, cart activity, conversion events, and user interactions, all of which are "contents" of communications.

76.   Defendant's tracking pixels intercept user communications while they are in transit. This interception occurs in real-time as users' communications are being sent to the intended website.

77.   Defendant willfully reads, analyzes, and learns the contents and meaning of these intercepted communications without user's knowledge or consent. Defendant uses these intercepted communications to build detailed household-level profiles, support its Verified Visits attribution methodology, and provide CTV advertising, targeting, and measurement services.

78.   Plaintiffs and Class Members did not consent to Defendant intercepting, reading, or using their communications. No notice was provided, and no opportunity to consent was given before the interceptions began.

79.   Defendant uses the intercepted communications for its own commercial purposes and, by doing so, has generated approximately $280 million in annual revenue. This use demonstrates that Defendant is not acting as a mere extension of the websites but as an independent party exploiting intercepted communications.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

80. Defendant's systematic interception and use of Plaintiffs' and Class Members' communications while in transit violates Cal. Penal Code § 631(a).

81. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the Class seek statutory damages of $5,000 per violation and injunctive relief.

## SECOND CAUSE OF ACTION

### Violation of Cal. Penal Code § 638.51

### (On behalf of Plaintiffs and the Class)

82. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

83. California law prohibits the installation of a pen register without first obtaining a court order. Cal. Penal Code § 638.51.

84. The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

85. Defendant's tracking pixel technology is a "pen register" because it is a device or process that records addressing or signaling information, in this instance, Plaintiffs' and Class Members' IP addresses, the websites they visited, derived location information, device identifiers, Google Analytics user IDs, and other persistent identifiers, from electronic communications transmitted by their devices. Furthermore, Defendant's software is a device or process that identifies consumers, gathers data, and correlates it, building comprehensive household-level profiles of users and their online activities.

86. Defendant was not authorized by any court order to use a pen register to track Plaintiffs' and Class Members' IP addresses, location, and personal information, nor did Defendant obtain consent from Plaintiffs and the Class to operate such a device.

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

87.     Defendant's systematic recording of Plaintiffs' and Class Members' IP addresses and other routing, addressing, and signaling information, without a court order or user consent, violates Cal. Penal Code § 638.51.

88.     Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the Class seek statutory damages of $5,000 per violation and injunctive relief.

### THIRD CAUSE OF ACTION

**Unlawful Recording of and Eavesdropping Upon Confidential Communications**

**Violation of Cal. Penal Code § 632**

**(On behalf of Plaintiffs and the Class)**

89.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90.     California Penal Code § 632 prohibits using "an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication . . . intentionally and without the consent of all parties to a confidential communication."

91.     Defendant's tracking pixel technology is an electronic amplifying or recording device for purposes of § 632. The tracking pixel duplicates and records users' interactions in real-time as they navigate webpages, including recording page views, links clicked, products viewed, conversion events, and other browsing activity. The tracking pixel also collects and records information from the browser, such as browser type, operating system, device information, and IP address.

92.     Section 632 defines a "confidential communication" to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."

93.     Plaintiffs' and Class Members' communications with websites deploying MNTN's tracking pixel were confidential communications for purposes of § 632. These communications included sensitive health-related browsing on websites such as lung.org, where users researched lung biopsies, lung cancer, and smoking cessation; browsing on feedingamerica.org, where users sought food assistance and explored programs for food-insecure individuals; and browsing on audienhearing.com, where

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

users researched hearing loss conditions and hearing aid products. Users reasonably expected these communications to remain between themselves and the websites they chose to visit, not to be secretly recorded by an undisclosed third-party advertising technology company.

94. Because Defendant did not disclose to Plaintiffs or Class Members that their private communications were being recorded and eavesdropped upon by MNTN, Defendant did not obtain, and could not have obtained, Plaintiffs' or Class Members' express or implied advance consent to MNTN's recording or monitoring of those communications. As a result, Plaintiffs and Class Members had an objectively reasonable expectation that their confidential communications were not being recorded and eavesdropped upon by MNTN.

95. That expectation and its objective reasonableness arise, in part, from: (i) the objective offensiveness of surreptitiously recording and eavesdropping upon people's private communications, particularly those involving sensitive health conditions, food insecurity, and personal medical information; (ii) the ease with which disclosure or a warning could have been provided; and (iii) the absence of any direct relationship between Plaintiffs and Class Members and MNTN that would put them on notice of MNTN's involvement.

96. Plaintiffs and Class Members expected that their personal and private communications with the websites they visited would not be intercepted and secretly recorded and eavesdropped upon by undisclosed third parties such as MNTN.

97. By deploying tracking pixels on advertiser and partner websites and using that technology to contemporaneously intercept, redirect, and record Plaintiffs' and Class Members' confidential communications, Defendant eavesdropped upon and recorded website users' confidential communications through an electronic amplifying or recording device, in violation of § 632.

98. At no time did Plaintiffs or Class Members consent to Defendant's unlawful conduct. Nor could Plaintiffs or Class Members reasonably expect that their

confidential communications with websites such as lung.org, feedingamerica.org, and audienhearing.com would be overheard or recorded by MNTN, an entity with whom they have no relationship and whose existence they were unaware of.

99. Upon information and belief, Defendant utilized Plaintiffs' and Class Members' sensitive personal information, including their health-related browsing activity, for Defendant's own commercial purposes, including building household-level identity profiles, powering cross-device attribution, and generating approximately $280 million in annual revenue.

100. Defendant's intentional eavesdropping upon and recording of Plaintiffs' and Class Members' confidential communications, without their consent, violates Cal. Penal Code § 632.

101. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the Class seek statutory damages of $5,000 per violation and injunctive relief.

**FOURTH CAUSE OF ACTION**

**California Comprehensive Computer Data Access and Fraud Act**

**Violation of Cal. Penal Code § 502**

**(On behalf of Plaintiffs and the Class)**

102. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

103. The California Legislature enacted the Comprehensive Computer Data Access and Fraud Act ("CDAFA") to "expand the degree of protection afforded to individuals... from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). In enacting the statute, the Legislature emphasized the need to protect individual privacy: "The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals." *Id*.

104. Plaintiffs' and Class Members' devices are "computers" or "computer systems" within the meaning of § 502(b) because they are devices capable of being

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

used in conjunction with external files and perform functions such as logic, arithmetic, data storage and retrieval, and communication.

105. Defendant violated the following sections of CDAFA § 502(c):

(a) "Knowingly accesses and without permission... uses any data, computer, computer system, or computer network in order to... wrongfully control or obtain money, property, or data." *Id.* § 502(c)(1).

(b) "Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network." *Id.* § 502(c)(2).

(c) "Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network." *Id.* § 502(c)(7).

106. Defendant knowingly "accessed" Plaintiffs' and the Class Members' computers and/or computer systems because it purposefully gained entry to and/or caused output from their computers to obtain personal information, including browsing data, device identifiers, IP addresses, Google Analytics user IDs, and persistent guid cookies.

107. Plaintiffs and the Class suffered damage and/or loss resulting from Defendant's conduct described herein. Specifically: (1) Defendant's software occupied Plaintiffs' and the Class's storage space on their devices without authorization; (2) Defendant's software caused data to be sent from Plaintiffs' and the Class's devices to MNTN; (3) Defendant's acts used the computer resources on Plaintiffs' devices; and (4) Defendant profited from the data taken from Plaintiffs and the Class without their consent and was thus unjustly enriched.

108. Plaintiffs and the Class now seek compensatory damages, injunctive relief, disgorgement of profits, other equitable relief, punitive damages, and attorneys' fees pursuant to § 502(e)(1)-(2).

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

27

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

# FIFTH CAUSE OF ACTION

## Invasion of Privacy

## Violation of Art. 1, § 1 of the California Constitution

## (On Behalf of Plaintiffs and the Class)

109. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

110. "Privacy" is listed in Article I, Section 1, of the California Constitution as a fundamental right of all Californians. That section of the Constitution provides as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1.

111. The right to privacy in California's Constitution creates a right of action against private entities such as Defendant. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

112. Plaintiffs and Class Members have a legally protected privacy interest in their IP addresses, location data, browsing activity, and other routing and behavioral information that MNTN captures without notice or consent when they access and view websites implementing MNTN's tracking pixels. These privacy interests are recognized by the California Constitution, CDAFA, and CIPA.

113. Plaintiffs and Class Members had a reasonable expectation of privacy concerning this data when navigating the internet. MNTN is a third-party advertising technology company with whom Plaintiffs and Class Members have no direct relationship. Nevertheless, MNTN, through its advertiser-installed tracking pixels, collects Plaintiffs' and Class Members' IP addresses, page views, browsing history, device information, and other routing information across multiple unrelated websites.

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

28

MNTN also uses this information to build comprehensive household-level profiles linking their online activities to CTV advertising exposure.

114. The identifiable and private information MNTN intercepted, stored, and used without Plaintiffs' and Class Members' consent was used to track them consistently and persistently across multiple websites and devices and to provide targeted CTV advertising, attribution, and measurement services. The manner in which MNTN intercepted this information deliberately circumvented established privacy-protection mechanisms and violated social norms.

115. Defendant's conduct constitutes an extremely serious invasion of privacy that would be highly offensive to a reasonable person because: (i) the information collected by MNTN is personally identifying information protected by the California Constitution and numerous statutes; (ii) MNTN creates comprehensive household-level profiles of users by linking their activities across multiple unrelated websites and connecting those profiles to CTV advertising exposure across devices; (iii) Defendant did not have authorization or consent to collect users' IP addresses and other routing information; and (iv) this invasion deprived Plaintiffs and Class Members of the ability to control the dissemination and use of their personal information, an ability that is a fundamental privacy right.

116. Reasonable individuals do not expect that there is an entity intercepting and monitoring their personally identifiable online activity across multiple websites, linking that activity to their household's CTV viewing, and using this information for profit through advertising targeting, attribution, and measurement services.

117. Defendant's conduct violated the privacy of hundreds of thousands (if not millions) of Class Members, including Plaintiffs. Defendant did not have consent to intercept this information, let alone use and monetize it.

118. As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have had their privacy invaded and have sustained injury, including the loss of control over their personal information.

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

29

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

119.    Plaintiffs and Class Members seek appropriate relief for those injuries, including but not limited to restitution, disgorgement of profits earned by Defendant because of, by way of, or in connection with the intrusions upon Plaintiffs' and Class Members' privacy, damages, and all other equitable and/or injunctive relief that will compensate Plaintiffs and Class Members properly for the harm to their privacy interests.

120.    Plaintiffs also seek such other relief as the Court may deem just and proper.

**SIXTH CAUSE OF ACTION**

**Violation of the Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On Behalf of Plaintiffs and the Class)**

121.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

122.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

123.    Defendant engaged in unlawful business practices in connection with their unauthorized collection of Plaintiffs' and Class Members' private information, in violation of the UCL.

124.    The acts, omissions, and conduct of Defendant as alleged herein constitute "business practices" within the meaning of the UCL.

125.    Defendant violated the "unlawful" prong of the UCL by violating, inter alia, Plaintiffs' and Class Members' constitutional rights to privacy, state privacy statutes, and state consumer protection statutes.

126.    Defendant's acts, omissions, and conduct also violate the "unfair" prong of the UCL because those acts, omissions, and conduct, as alleged therein, offended public policy (including state privacy statutes and state consumer protection statutes)

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

30

and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class Members.

127. The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct, and there were reasonably available alternatives to further Defendant's legitimate business interests other than Defendant's conduct described herein.

128. As a result of Defendant's violations of the UCL, Plaintiffs and Class Members have suffered injury in fact and lost money or property, e.g., access to their private and personal data, without receiving any consideration in return. Plaintiffs' and Class Members' personal data, including web browsing and device data and personally identifying and addressing information, has monetary value. Defendant deprived Plaintiffs and Class Members of that valuable data without providing just compensation. Plaintiffs and Class Members would not have used the websites identified herein, *supra*, ¶58 - ¶60 had they known Defendant was collecting and using their personally identifying and addressing information through those sites for cross-device advertising, attribution, and measurement purposes.

129. UCL § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive, and fraudulent business acts and practices and may order restitution to Plaintiffs. Plaintiffs and Class Members are entitled under UCL §§ 17203 and 17208 to restitution and restoration of all property belonging to Plaintiffs and Class Members in Defendant's possession and any ill-gotten money Defendant may have obtained by virtue of possessing Plaintiffs' and Class Members' property.

130. As a result of Defendant's violations of the UCL, Plaintiffs and Class Members are further entitled to injunctive relief enjoining Defendant's unlawful and unfair business activities and practices, including an injunction terminating all further collection and use of Plaintiffs' and Class Members' personal data. This is particularly

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

31

true since the collection and dissemination of Plaintiffs' and Class Members' information is ongoing.

131. Plaintiffs additionally seek any and all other equitable relief that the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### Common Law Invasion of Privacy – Intrusion Upon Seclusion

### (On Behalf of Plaintiffs and the Class)

132. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

133. To state a claim for intrusion upon seclusion, Plaintiffs must establish that: (1) the defendant intruded on a place, conversation, or matter in which Plaintiffs had a reasonable expectation of privacy; and (2) the intrusion would be highly offensive to a reasonable person.

134. Defendant's collection, interception, and use of Plaintiffs' and Class Members' personally identifiable information, including IP addresses, browsing history, page views, device identifiers, Google Analytics user IDs, and persistent guide cookies, constitute an intentional intrusion. MNTN's use of this information to create detailed household-level profiles of individuals through its tracking technology and identity graph, which tracks and profiles Plaintiffs and Class Members across multiple unrelated websites and links that activity to CTV advertising exposure, likewise constitutes an intentional intrusion.

135. Plaintiffs and Class Members reasonably expected that their IP addresses, location data, and other personal information would not be intercepted, collected, or used by MNTN, a third-party advertising technology company with whom they have no direct relationship.

136. This expectation is particularly reasonable given that MNTN operates entirely behind the scenes, with no visible interface for users, no direct services provided to users, and no opportunity for users to review or consent to MNTN's privacy practices.

137. The information MNTN collects is especially sensitive because it includes IP addresses (which reveal users' geographic locations), health-related browsing activity (from websites such as lung.org), and is used to create comprehensive household-level profiles tracking users' activities across multiple unrelated websites and linking those activities to television advertising exposure across devices.

138. Plaintiffs and Class Members did not consent to, authorize, or understand MNTN's interception or use of their private data.

139. Defendant's conduct is highly offensive to a reasonable person because: (a) it violates established social norms and expectations regarding online privacy; (b) it occurs without users' knowledge or consent and provides no opportunity for users to opt out; (c) it creates comprehensive household-level profiles of users' online activities across multiple unrelated websites and links those profiles to CTV advertising exposure across devices; and (d) it monetizes users' personal information for Defendant's commercial gain without their knowledge or compensation.

140. Defendant's conduct caused Plaintiffs and Class Members harm, including a violation of their privacy interests and loss of control over their personal information.

141. Plaintiffs and Class Members seek damages to compensate for the harm to their privacy interests, among other damages, as well as disgorgement of profits made by Defendant as a result of its intrusion upon seclusion.

142. Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

143. Plaintiffs and Class Members also seek any other relief the Court may deem just and proper.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Crystal Tuthill, Gregory Urrutia, and Ted Lukowski individually and on behalf of the Class, pray for the following relief:

(a) An order certifying the Class as defined above, appointing Crystal Tuthill, Gregory Urrutia, and Ted Lukowski as the representatives of the Class, and appointing their counsel as Class Counsel;

(b) An order declaring that Defendant's actions, as set out above, violate Cal. Pen. Code § 631, Cal. Pen. Code § 638.51, Cal. Pen. Code § 632, Cal. Pen. Code § 502, and Art. 1, § 1 of the California Constitution, Cal. Bus. & Prof. Code § 17200, and constitute a common law invasion of privacy.

(c) An injunction requiring Defendant to cease all unlawful activities, including, but not limited to, an injunction terminating all further collection and use of Plaintiffs' and Class Members' personal data;

(d) An award of statutory damages, disgorgement of profits, punitive damages, costs, and attorneys' fees;

(e) Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Crystal Tuthill, Gregory Urrutia, and Ted Lukowski, individually and on behalf of all others similarly situated,

Dated: April 23, 2026

By: */s/ Amber L. Schubert*
Attorney for Plaintiffs (Bar No. 278696)
Email: aschubert@sjk.law
**SCHUBERT JONCKHEER & KOLBE LLP**

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

34

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
aschubert@sjk.law

Fletch Trammell (TX Bar No. 24042053)
*Pro hac vice* forthcoming
**TRAMMELL PC**
3262 Westheimer, #423
Houston, TX 77098
Tel: (800) 405-1740
Fax: (800) 532-0992
fletch@trammellpc.com

Don Bivens (AZ Bar No. 005134)
*Pro hac vice* forthcoming
**DON BIVENS PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Tel: (602) 762-2661
don@donbivens.com

*Counsel for Plaintiffs and the Proposed Class*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

CLASS ACTION COMPLAINT–DEMAND FOR JURY TRIAL

35