Fletcher Trammell (TX Bar No. 24042053)
*Pro hac vice forthcoming*
**TRAMMELL PC**
3262 Westheimer, #423
Houston, TX 77098
Tel: (800) 405-1740
fletch@trammellpc.com

Amber L. Schubert (CA Bar No. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
aschubert@sjk.law

*Counsel for Plaintiffs & Proposed Class*

[*Additional Counsel on Signature Page*]

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRYSTAL TUTHILL, GREGORY URRUTIA, TED LUKOWSKI, PATTI RIDER, and PAUL STEPHENS, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MNTN, INC., a Delaware corporation,<br><br>*Defendant*. | Case No.: 3:26-cv-02600<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>Cal. Penal Code § 631<br>Cal. Penal Code § 638.51<br>Cal. Penal Code § 632<br>Cal. Penal Code § 502<br>California Constitution Art. 1, § 1<br>Cal. Bus. & Prof. Code § 17200, *et seq*.<br>Intrusion Upon Seclusion<br>Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*.<br>Unjust Enrichment |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## NATURE OF THE ACTION

1. This putative class action lawsuit challenges MNTN, Inc.'s ("MNTN" or "Defendant") pervasive data surveillance of consumers' internet activities, including the internet activities of California residents, without their knowledge or consent. As detailed herein, MNTN's surveillance of unsuspecting Americans is incredibly vast and includes but is certainly not limited to their sensitive health-related communications.

2. MNTN is an advertising technology company that helps businesses run and measure the effectiveness of television advertisements delivered through internet-based streaming services (commonly known as "Connected TV" or "CTV"), such as those viewed on Roku, Apple TV, and similar smart TV devices.

3. To measure whether a streaming TV ad incentivizes a viewer to take action, MNTN embeds invisible tracking code on thousands of its advertising clients' websites. This tracking code secretly intercepts users' communications with those websites in real time including, but not limited to, their page views, browsing activity, product interactions, and conversion events, and links those communications back to the television ads MNTN delivered to the user's household.

4. MNTN deploys tracking and conversion pixels that collect users' IP addresses, device information, browsing data, inferred location, Google Analytics user IDs, and persistent cookie identifiers, including a unique identifier labeled "guid" that follows users across different websites and browsing sessions.

5. These trackers enable MNTN to build detailed identity profiles on millions of consumers, logging what pages they visit, what products they view, and what sensitive information they research, all to support MNTN's CTV advertising campaigns.

6. MNTN's surreptitious interception of users' communications violates California's wiretapping laws and the federal Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. (the "ECPA"). MNTN's systematic collection of IP addresses and routing information without a court order violates California's pen register statute. And MNTN's unauthorized access to users' devices to extract personal data violates multiple

other privacy protections under California law. MNTN has been unjustly enriched by this unlawful conduct.

7. Plaintiffs therefore bring this action on behalf of a nationwide Class of individuals whose electronic communications were intercepted by MNTN's tracking pixel, and a California sub-Class of California residents whose privacy has been invaded by MNTN's unlawful tracking, seeking damages, restitution, and injunctive relief to stop these violations.

## PARTIES

8. Plaintiff Crystal Tuthill is an individual and citizen of the State of California, residing in Moreno Valley, California.

9. Plaintiff Gregory Urrutia is an individual and citizen of the State of California, residing in Copperopolis, California.

10. Plaintiff Ted Lukowski is an individual and citizen of the State of California, residing in Westminster, California.

11. Plaintiff Patti Rider is an individual and citizen of the State of California, residing in Roseville, California.

12. Plaintiff Paul Stephens is an individual and citizen of the State of California, residing in San Diego, California.

13. Defendant MNTN, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from the Defendant.

15. This Court also has federal question jurisdiction over Plaintiffs' claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' related state-law claims

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

16. MNTN is subject to specific personal jurisdiction in California, including in this District, because it purposefully directed its data collection and monetization activities toward California residents. These contacts with California are deliberate, not incidental.

17. As demonstrated herein, MNTN processes users' IP addresses to derive California-specific location data, including city, state, and inferred geographic coordinates. MNTN records this California location alongside users' browsing activity and persistent identifiers and uses it to enhance the commercial value of its media measurement and advertising services and to determine which California households are eligible to receive specific Connected TV ads. Each such identification of a California user constitutes a purposeful contact with California.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

18. Upon information and belief, MNTN derives direct financial benefit from identifying and targeting California users. Advertisers pay for the ability to reach specific audiences in defined geographic markets, and California, the nation's most populous state, is among the most valuable markets. When MNTN identifies a user as a California resident through IP-based geolocation and includes that in its identity graph for CTV targeting, attribution, and measurement, it monetizes that California-specific information. MNTN's California contacts thus generate revenue, not merely incidental data.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims, including Plaintiff Paul Stephens's residence in this District and the interception of communications of Plaintiffs who reside in and used websites within this District, occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A. MNTN's Business Model Depends on Secretly Collecting and Selling User Data.

20. MNTN operates as an advertising platform that helps businesses run television ads on internet-based streaming services.

21. It is often responsible for the ads viewers see when watching content on Roku, Apple TV, and similar smart TV streaming devices.

22. Unlike traditional television advertising, which targets broad audiences, MNTN's platform allows advertisers to target specific individuals and then track whether those individuals subsequently visit the advertiser's website. MNTN refers to this as its "Performance TV" platform because it promises advertisers measurable, performance-based results from their streaming TV ad spend.

23. MNTN's platform operates within a broader digital advertising infrastructure that connects two sides of a market: advertisers, who seek to reach audiences, and publishers, who own digital properties (such as websites or streaming platforms) and seek to monetize them.

24. Advertisers use demand-side platforms to automate the purchase of ad space, while publishers use supply-side platforms to sell their available ad space.

25. MNTN operates on the advertiser side of this infrastructure as its platform allows advertisers to define their target audiences, budgets, and campaign goals, and then automates the purchase and delivery of streaming TV ad space on their behalf.

26. To assess whether a streaming TV ad actually leads to a desired outcome such as a website visit or purchase (known as a "conversion"), advertisers rely on "conversion tracking," which measures whether users complete specific actions after seeing an ad. Conversions are typically measured using tracking pixels or scripts embedded in advertiser websites and designed to capture event data in real time.

27. What distinguishes MNTN from a conventional ad-buying platform is the scale and intrusiveness of its infrastructure.

28. MNTN uses tracking pixels installed on advertisers' websites, combined with an identity graph, to determine whether streaming TV ad exposures lead to subsequent website visits and conversions, and to optimize campaigns based on those results.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

29. It is this pervasive and intrusive tracking infrastructure, deployed across thousands of advertiser websites and collecting vast quantities of personal data to link CTV ad exposure to subsequent user activity, that gives rise to the claims in this action.

30. MNTN's core revenue-generating activities depend on the collection and analysis of user interactions with advertiser websites following ad exposure.

31. MNTN's Form 10-Q for the period ending on March 31, 2026 discloses that its business "depends on [its] ability to collect, use, and disclose data . . . to deliver and measure the effectiveness of ads."[1]

32. The filing acknowledges that MNTN collects and uses a wide range of sensitive and personal user data, including advertising identifiers, IP addresses, location data, hashed email addresses, browser and device information, and online browsing behavior—all of which is sourced from advertiser-implemented pixels, CRM data, and third-party data providers such as LiveRamp.[2]

33. MNTN's SEC filings also state that it aggregates and analyzes this data to support the pricing, placement, targeting, and scheduling of ads, and emphasizes that its ability to target and measure the effectiveness of ads is critical to the value of its services.[3]

34. The company expressly warns that restrictions on its or its customers' ability to collect or use data, including through pixels or similar technologies, could significantly diminish the value of its platform, resulting in customer attrition, revenue loss, and adverse effects to its business.[4]

## B. MNTN Collects Private User Data Without User's Knowledge or Consent.

---

[1] "MNTN, Inc." U.S. SECURITIES AND EXCHANGE COMMISSION – EDGAR | COMPANY SEARCH RESULTS. Form 10-Q, March 31, 2026, page 42. Accessible at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001891027/000189102726000040/mntn-20260331.htm (Last accessed June 30, 2026).

[2] *Id.*

[3] *Id.*

[4] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

35. MNTN recommends that advertisers implement tracking and conversion pixels on their websites when using its Performance TV platform. These pixels are the foundation for MNTN's tracking, profiling, and user identification across websites and over time.

36. The MNTN tracking pixel is placed site-wide on advertiser properties and is triggered automatically when a webpage is loaded by a user, enabling the collection of page-level interaction data and identifier signals associated with the user and their site visits.

37. The MNTN conversion pixel is deployed on designated conversion pages and is triggered when a pre-defined user action occurs, such as a purchase or sign-up, transmitting event-level data used to attribute conversions back to Connected TV advertising campaigns.

38. When a user uses an internet browser to access a webpage containing an MNTN tracking pixel, MNTN's code automatically begins to work behind the scenes while the user engages with the website.

39. As the user interacts with the website, loading pages, viewing content, browsing products, and completing actions, MNTN's tracking pixel simultaneously reads and captures information that the user only intended to convey to the website that the user is using. This information includes the URLs the user visited, the names and contents of pages viewed, product interactions, and conversion events.

40. This interception occurs in real time, contemporaneously with the user's communications with the website, as the webpages load and as users navigate the site. MNTN's tracking pixel reads and captures these communications while they are in transit between the user and the website, not through after-the-fact processing or delayed reporting. MNTN does all this without the user's knowledge or consent.

41. The core persistent identifier used by MNTN is a cookie labeled "guid," which functions as a unique identifier associated with a specific browser or device.

42. A cookie is a small text file that a web server instructs a browser to store on the user's device. Once stored, the cookie is automatically included in future communications with that server, allowing the server to recognize returning visitors.

43. Unlike session-based identifiers that expire when a browser is closed, the guid cookie persists across browsing sessions, enabling MNTN to recognize returning users and link multiple visits to the same user environment over time.

44. This persistence allows MNTN to associate post-ad website activity with prior CTV ad exposure and to support ongoing attribution, analytics, and performance measurement—again, without the user's knowledge or consent.

45. This persistent identifier infrastructure is a core technical mechanism by which MNTN collects and processes user data in connection with its Performance TV products and attribution services.

46. When advertisers integrate MNTN's tracking infrastructure onto their websites, MNTN can set or access this persistent identifier within the user's browser.

47. In this way, MNTN's tracking operates directly within advertiser environments, allowing MNTN to recognize users across multiple visits to advertiser websites without requiring users to interact directly with MNTN's own domains.

48. MNTN previously operated under the name "SteelHouse" and continues to operate domains such as steelhousemedia.com alongside mountain.com.

49. Cookies set under both domains use the same persistent guid identifier.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

### C. MNTN's Trackers Follow and Record User Information and Habits Over Time.

50. MNTN's United States Regional Privacy Notice ("Notice") outlines the categories of personal information the company collects and processes for individuals residing in California and other states.[5]

51. According to the Notice, MNTN processes identifiers and online activity information, including: (1) IP addresses (from which it derives "city-level location" information); (2) cookie identifiers (including the persistent guid cookie); (3) mobile advertising identifiers; (4) hashed email addresses; (5) device and browser information; and (6) information about users' interactions with websites and ads, including site visits, ad exposure, page URLs, product views, cart activity, conversion events, and other online activity.

52. MNTN's General Privacy Policy ("Privacy Policy") further confirms how user data flows to MNTN through its marketing services.[6]

53. According to the Privacy Policy, MNTN receives the advertising IDs, IP addresses, and hashed email addresses of its advertising customers' website visitors. MNTN's SEC filings and technical documentation identify specific third-party data providers, such as LiveRamp, that pass this information and device identifiers directly to MNTN on a recurring basis. MNTN receives this data without the user's consent or knowledge and uses it to enrich the identity graphs MNTN creates for its advertising customers.

54. An IP address is a unique numerical identifier that guides or routes communications across the internet. Often written as four sets of numbers separated by periods (e.g., 192.555.455.145), internet service providers assign unique IP addresses to networking devices such as modems or routers—in other words, each device gets its own

---

[5] "United States Regional Privacy Notice." MNTN. Accessible at https://mountain.com/regional-privacy-notice/ (Last accessed June 30, 2026).

[6] "Privacy Policy." MNTN. Accessible at https://mountain.com/privacy-policy/ (Last accessed June 30, 2026).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

IP address that helps information flow to and from the device as the user uses the device to access and interact with others through the internet.

55. The geolocation capability of IP addresses makes them extraordinarily valuable for digital advertising and tracking purposes.

56. IP addresses allow companies to target ads to users in specific geographic areas with over 95% accuracy. For example, businesses who are trying to reach specific demographics can target devices on college campuses by sending ads to IP addresses associated with college-wide Wi-Fi networks or associated with particular events where college students are likely to be, such as job fairs or festivals.

57. By using IP addresses to target specific individuals, households, businesses or events, MNTN can segment audiences by geography and provide location-based advertising insights to its clients.

58. An IP address constitutes "routing, addressing, or signaling information." It is "routing" or "signaling" information because it sends or directs the user's communication from the router in their home or workplace to the website they are communicating with, ensuring that the web content being accessed (whether that be websites, streaming content, emails, or other data) reaches the user correctly. It is "addressing" information because it determines the general geographic coordinates of the user who is accessing a website.

59. When combined with a tracking tool like MNTN's guid cookie, IP addresses can be powerful tools for identifying specific individuals and tracking their browsing habits.

60. A cookie assigns a stable identifier to a particular browser, while an IP address identifies the network connection used at that moment.

61. When the same cookie identifier reappears from different IP addresses over the course of a day or week—for example: a residential IP address in the morning and evening, an employer's IP address during working hours, and a coffee shop's IP address

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

during lunch—the company can associate those networks, and the locations they imply, with the same user.

62. Over time, that pattern distinguishes that user from others who share the same network, and maps routine usage. Because cookies persist across IP address changes (mobile data, travel, dynamic addressing), they bridge sessions and provide continuity, while IP address information supplies location and network context. Used together, cookies and IP addresses enable highly granular tracking of a browser's activity across sites and over time.

63. MNTN's tracking pixel functions as a pen register, systematically recording users' IP addresses and routing information from thousands of advertiser websites as an undisclosed third party that the users have no knowledge of or relationship with.

64. This data collection begins the moment a page loads, before users have any opportunity to review privacy policies or consent to tracking. The transmission to MNTN's servers occurs automatically in the background, invisible to users.

65. MNTN's tracking pixel intercepts communications between users and website operators while the communications are in transit. As data travels between users' browsers and a website's servers, the tracking pixel intercepts and reads these transmissions in real-time, capturing page visits as they happen, product interactions, and conversion events as they occur. MNTN reads or attempts to read these communications by analyzing and interpreting the data streams mid-transmission, automatically identifying and classifying data types and values, extracting personal information, page URLs, and behavioral data while the communications are still traveling to their intended destination.

**D. MNTN Turns the User Data into Detailed Identity Graphs.**

66. The data MNTN collects through its tracking pixels and from third-party data and identity providers does not simply sit in a database. MNTN uses it to build cross-device identity graphs and power an attribution methodology called "Verified Visits."

67. According to MNTN's website, an identity graph is built by continuously collecting and aggregating device-level signals from multiple sources, including data

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

transmitted when MNTN's tracking pixel fires on advertiser websites (e.g., device identifiers, IP addresses, Google Analytics user IDs, and behavioral signals), identifiers passed by third-party partners such as LiveRamp on a recurring basis, and identifiers accessed through MNTN's technology when devices receive CTV ad impressions.[7]

68. These identifiers are matched to recognize and build connected identity profiles.[8] When a user's identifiers have been previously observed, MNTN synchronizes those identifiers with its existing identity profiles; if the identifiers are new, MNTN creates a new record linking the user with the household.

69. MNTN's Verified Visits methodology then uses this identity graph to determine whether exposure to a CTV ad leads to subsequent visits to an advertiser's website. MNTN records CTV ad impressions and associates them with identity signals. Then it monitors post-ad website interactions on other devices within the same identity profile during a defined attribution window.

70. When a website visit is detected through MNTN's tracking pixel, the platform matches the visitor's signals against impression-level data to determine whether a qualifying visit occurred following ad exposure, and synchronizes attributed visit data with analytics platforms, including Google Analytics, for performance reporting.

---

[7] "Understand MNTN's Identity Graph." MNTN Help Center. Accessible at https://help.mountain.com/en/articles/8107916-understand-mntn-s-identity-graph (last accessed June 30, 2026).

[8] MNTN's Identity Graph is built and maintained using identifiers associated with individual users and devices. MNTN explains that it "match[es] users' device information" to its Identity Graph and, if it has not previously "seen this user," "create[s] a new record for that user." It further states that the graph uses identifiers including "IP Address," "device identifier," and "Google Analytics User IDs." See *supra* n. 7. Likewise, MNTN represents that it uses its identity graph to validate when "a person" watches a connected television advertisement before matching "that person's" subsequent website visits from devices within the household, thereby tracking "that person's online and site behaviors." *See* MNTN, *Understand MNTN Attribution*, https://help.mountain.com/en/articles/12608309-understand-mntn-attribution (last visited July 8, 2026).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

71. In other words, MNTN's tracking pixels do not merely record isolated page views. They feed a system that links an individual's browsing activity across multiple unrelated websites to their household's television viewing, using individuals' sensitive, personal information to create comprehensive cross-device profiles without the knowledge or consent of the individuals being profiled.

**E. MNTN Sells User Data for Financial Gain.**

72. MNTN does not collect user data for the benefit of the user. As MNTN acknowledges in its Form 10-Q, its business "depends on [its] ability to collect, use, and disclose data . . . to deliver and measure the effectiveness of ads."[9] MNTN monetizes user data by transforming it into targeting, attribution, and measurement capabilities that it can sell to advertisers through its Performance TV platform.

73. MNTN's platform enables advertisers to onboard customer data, including customer lists from CRM data, where those identifiers are processed for matching and activation across CTV inventory.

74. This allows advertisers to use sensitive, personal information to target known customers, suppress existing customers, or extend reach to additional households associated with similar audience characteristics.

75. MNTN also offers access to pre-built audience segments sourced from third-party data and identity partners, including demographic attributes, inferred interests, purchase-related behaviors, and other behavioral characteristics. Data collected through MNTN's pixels—without user knowledge or consent—is used to build these audience segments and support targeting and retargeting capabilities.

76. MNTN generates approximately $280 million in annual revenue from these advertising services. The more granular and linkable the underlying user data, the more

---

[9] "MNTN, Inc." U.S. SECURITIES AND EXCHANGE COMMISSION – EDGAR | COMPANY SEARCH RESULTS. Form 10-Q, March 31, 2026, page 42. Accessible at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001891027/000189102726000040/mntn-20260331.htm (last accessed June 30, 2026).

valuable MNTN's platform is to advertisers, and the more MNTN can charge for its services.

**F. MNTN Divulges User Data to Third Parties Through Real-Time Bidding Auctions.**

77. MNTN does not merely collect and retain user data; it also divulges that data to third parties through its participation in real-time bidding ("RTB") auctions. In the RTB process, when ad inventory becomes available, identifying information and behavioral signals about the user are transmitted to supply-side platforms ("SSPs"), ad exchanges, and other participants in the programmatic advertising ecosystem so that advertisers can bid to serve an ad to that user.

78. Through its participation in RTB auctions, MNTN transmits users' identity data and behavioral signals—including information derived from the communications intercepted by its tracking pixel—to SSPs, ad exchanges, and other third-party participants, even though only the winning bidder ultimately serves an ad. As a result, MNTN discloses users' personal information to numerous third parties without users' knowledge or consent.

79. By cross-referencing the identifiers it collects through its tracking pixel against its identity graph and LiveRamp's authenticated data graph, MNTN converts a nominally anonymous web visit into a deanonymized record tied to an identifiable individual, which it then uses and divulges for commercial gain.

80. Plaintiffs and Class Members, by contrast, receive no benefit from MNTN's tracking and divulgence of their personal information.

**G. MNTN's Tracking Systems Are Embedded into Advertiser and Partner Websites, and Users Never Know They're Also Interacting with MNTN.**

81. MNTN's tracking pixel technology is deployed across numerous websites, including those containing sensitive medical and health information, as well as e-commerce websites through which users transmit personal and purchase information.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

82. The following examples demonstrate how this tracking operates without user consent.

83. **Example #1:** American Lung Association (lung.org). The American Lung Association is a nonprofit organization dedicated to improving lung health and preventing lung disease through education, advocacy, research, and support. Its website (lung.org) provides extensive health-related content and resources covering topics such as asthma, COPD, lung cancer, air quality, smoking cessation, and respiratory infections.

84. When a user visits lung.org, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains (including steelhousemedia.com and mountain.com). This transmission includes several pieces of sensitive, personal information: (1) the contents of the user's communications with the website, including the page URLs visited and the names of the pages viewed; (2) the user's IP address, from which MNTN derives the user's geographic location; and (3) the persistent guid cookie identifier associated with the user's browser, which allows MNTN to recognize the user across different websites and browsing sessions. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

85. For example, when users browse pages related to COPD, lung biopsies, lung cancer, or smoking cessation on lung.org, MNTN's tracking pixel captures those pages' complete URLs, which contain this sensitive health-related information, alongside the user's IP address and guid cookie. These transmissions link the user's sensitive health-related information and browsing to their persistent guid identifier, enabling MNTN to associate these health queries with any past or future browsing activity by the same user across numerous websites and with their household's CTV viewing activity.

86. **Example #2:** Feeding America (feedingamerica.org). Feeding America is a nonprofit organization focused on ending hunger in the United States by supporting a nationwide network of food banks and community partners. Its website (feedingamerica.org) offers information on hunger relief programs, resources for

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

individuals and families in need, tools for finding local food assistance, and ways to get involved through volunteering or donations.

87. When a user visits feedingamerica.org, their sensitive personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page URLs visited and content viewed; (2) the user's IP address, from which MNTN derives the user's geographic location; and (3) the persistent guid cookie identifier associated with the user's browser. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

88. For example, when users search and view the pages for local food banks, explore senior food programs, or seek other assistance through feedingamerica.org, MNTN's tracking pixel captures the complete URLs of these pages which contain this sensitive, personal content and other browsing interactions alongside the user's IP address and guid cookie. This information, which may reveal that a user is experiencing food insecurity, is linked to the user's persistent identifier and used to support MNTN's cross-device attribution and profiling.

89. **Example #3:** Audien Hearing (audienhearing.com). Audien Hearing is a consumer hearing-technology company focused on providing hearing aids for adults with mild to moderate hearing loss. Its website (audienhearing.com) presents product information, pricing, and purchasing options for hearing devices, along with educational content explaining hearing loss and how hearing aids work.

90. When a user visits audienhearing.com, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page URLs visited and content viewed; (2) the user's IP address; and (3) the persistent guid cookie identifier.

This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

91. For example, when users browse hearing specialist pages or view specific hearing aid products, MNTN's tracking pixel captures the complete URLs of these pages which contain this sensitive health content, alongside the user's IP address and guid cookie. These transmissions link the user's sensitive health-related browsing to their persistent guid identifier, enabling MNTN to associate these health queries with any past or future browsing activity by the same user across numerous websites and with their household's CTV viewing activity.

92. **Example #4:** KQED (kqed.org). KQED (kqed.org) is a public media organization serving Northern California that provides news, radio, podcasts, television programming, and digital content across a variety of topics, including local and national news, politics, arts and culture, science, and education.

93. When a user visits kqed.org, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page URLs visited and content viewed; (2) the user's IP address; and (3) the persistent guid cookie identifier. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

94. For example, when users read articles about mental health topics or political news on kqed.org, MNTN's tracking pixel captures the complete URLs of these pages which contain this content alongside the user's persistent identifiers, enabling MNTN to associate this media consumption with the user's advertising profile.

95. **Example #5:** Grubhub (grubhub.com). Grubhub is a leading online and mobile food-ordering and delivery marketplace that connects consumers with local restaurants through its direct-to-consumer e-commerce platform.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

96. When a user visits the Grubhub website, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page URLs visited and content viewed; (2) the user's IP address; and (3) the persistent guid cookie identifier. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

97. For example, MNTN's tracking pixel can intercept the contents of the user's communications with Grubhub, including full-string URLs that disclose the specific restaurants the user viewed and ordered from—including the restaurants' names and addresses—along with the user's cart contents, order data, IP address, and persistent identifiers, and transmit that data to MNTN's servers at px.mountain.com without the user's consent or knowledge.

98. **Example #6:** Maurices (maurices.com). Maurices is a leading women's clothing store that offers online shopping options.

99. When a user visits the Maurices website, their personal information is immediately transmitted to MNTN through MNTN's embedded tracking pixel, which communicates with MNTN-controlled domains. This transmission includes: (1) the contents of the user's communications with the website, including the page URLs visited and content viewed; (2) the user's IP address; and (3) the persistent guid cookie identifier. This data is immediately and automatically transmitted to MNTN without the user's consent or knowledge.

100. For example, MNTN's tracking pixel can intercept the contents of the user's communications with Maurices, including full-string URLs that disclose the specific items the user viewed and ordered, along with the user's cart contents, order data, IP address, and persistent identifiers, and transmit that data to MNTN's servers at px.mountain.com without the user's consent or knowledge.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

### H. MNTN Never Alerts Users to Its Activities, and Never Asks for Consent to Collect and Share User Data.

101. Throughout these data collection activities, MNTN operates without user consent. The data collection begins immediately when a webpage loads, before users can review any privacy policies or make choices about tracking.

102. Users are never presented with the Privacy Policy, never agree to MNTN's data collection, and have no opportunity to opt out before their sensitive, personal data is transmitted to MNTN's servers. Most users remain entirely unaware that MNTN exists, much less that it maintains profiles linking their website browsing activity to CTV ad exposure across multiple devices.

103. The Privacy Policy confirms this lack of direct relationship with the individuals it tracks. The policy states that MNTN receives IP addresses, cookie IDs, and hashed email addresses from its advertiser-customers, and processes this information pursuant to written contracts with those customers rather than collecting it directly from end users.[10]

104. Users never reviewed MNTN's privacy policies, never agreed to a relationship with MNTN, and never authorized MNTN to collect and store their sensitive, personal information to build identity profiles linking their CTV viewing to their website activity across devices.

## FACTS SPECIFIC TO REPRESENTATIVE PLAINTIFFS

105. During the Class Period, each Plaintiff visited one or more websites that deployed MNTN's tracking pixel technology. Each Plaintiff's sensitive, personal information, including their IP address, device information, browsing activity, and persistent guid cookie identifier, was intercepted and collected by MNTN.

106. Plaintiff Crystal Tuthill is a resident of Moreno Valley, California. She visited feedingamerica.org within the past year using the Chrome browser on her phone.

---

[10] *See* "Privacy Policy." MNTN. Accessible at https://mountain.com/privacy-policy/ (Last accessed June 30, 2026).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

On this website, Crystal Tuthill browsed upcoming events. Crystal Tuthill does not have an account on this website and has not consented to any privacy policy that this website may have published. Crystal Tuthill did not know that MNTN was collecting her personal information when she visited this website and never gave MNTN consent to intercept her communications and collect data about her.

107. Plaintiff Gregory Urrutia is a resident of Copperopolis, California. He visited audienhearing.com within the past year using the Chrome browser on his phone. On this website, Gregory Urrutia browsed hearing aid products. Gregory Urrutia does not have an account on this website, has never subscribed to its newsletter, and has not consented to any privacy policy that this website may have published. Gregory Urrutia did not know that MNTN was collecting his personal information when he visited this website and never gave MNTN consent to intercept his communications and collect data about him.

108. Plaintiff Ted Lukowski is a resident of Westminster, California. He visited audienhearing.com within the past year using the Chrome browser on his laptop. On this website, Ted Lukowski browsed hearing aid products. Ted Lukowski does have an account on this website but has not consented to any privacy policy that this website may have published. Ted Lukowski did not know that MNTN was collecting his personal information when he visited this website and never gave MNTN consent to intercept his communications and collect data about him.

109. Plaintiff Patti Rider is a resident of Roseville, California. On multiple occasions throughout 2025, she visited the Grubhub website (www.grubhub.com) using an internet browser to browse restaurants and place food-delivery orders, as well as the Maurices website (www.maurices.com) to browse and purchase clothing. While browsing the Grubhub and Maurices websites, Patti Rider viewed restaurant and menu pages, pages for specific clothing items, added items to her cart, entered personal information including her name and delivery address, and completed orders. When Patti Rider visited the Grubhub and Maurices websites and engaged in these activities, MNTN's tracking pixel was active on the websites and intercepted the contents of her communications with the

websites—including full-string URLs that disclosed the specific restaurants she viewed and ordered from and specific items she viewed and ordered—and transmitted that data to MNTN's servers at px.mountain.com. Patti Rider does not have a direct relationship with MNTN and was unaware of MNTN's presence on the Grubhub and Maurices websites. Patti Rider did not know that MNTN was collecting her personal information when she visited these websites and never gave MNTN consent to intercept her communications and collect data about her.

110. Plaintiff Paul Stephens is a resident of San Diego, California. He visited lung.org, the website of the American Lung Association, within the past year using the Chrome browser on his laptop. On this website, Paul Stephens researched COPD-related resources and articles, including a page titled "Help Us Learn More About Living Well With COPD." When Paul Stephens browsed COPD-related pages on lung.org, MNTN's tracking pixel captured the complete URLs of those pages—which contained sensitive health-related information—alongside his IP address and persistent guid cookie, and transmitted that information to MNTN-controlled domains. Paul Stephens did not consent to any privacy policy that this website may have published. Paul Stephens did not know that MNTN was collecting his personal information when he visited this website and never gave MNTN consent to intercept his communications and collect data about him.

111. Upon information and belief, MNTN identified Plaintiffs and created identity graphs and profiles containing their browsing activity, device identifiers, and advertising exposure, including based on their activity on the websites identified above.

112. Plaintiffs did not know, nor had reason to know, that unknown third-party MNTN surreptitiously collected information about their web activity (including their IP addresses) and created profiles linking their browsing activity to CTV advertising exposure.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## CLASS ACTION ALLEGATIONS

113. Class Definitions: Plaintiffs bring this proposed class action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of themselves and the following Class and California Sub-Class:

> **Nationwide Class:** All natural persons in the United States whose electronic communications were intercepted by MNTN's tracking pixel during the Class Period (the "Class").

> **California Sub-Class:** All California residents who visited a website with the MNTN tracking pixel embedded or who otherwise had their information collected by MNTN through its tracking technology, during the Class Period (the "California Sub-Class").

114. Unless otherwise specified, references to the "Class" include the Nationwide Class and the California Sub-Class. The "Class Period" is the maximum period permitted by the applicable statutes of limitations.

115. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; (6) registered users of websites who were presented with and affirmatively assented to the website's Terms of Use and Privacy Policy during the registration process; and (7) the legal representatives, successors, and assigns of any such excluded persons.

116. **Numerosity:** The exact number of Class Members is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has surreptitiously collected and analyzed data from hundreds of thousands, if not millions, of consumers who fall into the definition of the Class. Class Members can be identified through Defendant's records.

117. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a. Whether Defendant read, attempted to read, or learned the content of the communications made by Plaintiffs and the Class;

b. Whether Defendant's actions were willful;

c. Whether Defendant had the capability to and/or used Plaintiffs' and the Class Members' communications for their own purposes;

d. Whether Defendant's software is a pen register;

e. Whether Defendant accessed Plaintiffs' and the Class Members' computer systems;

f. Whether Defendant intercepted the contents of Plaintiffs' and the Class Members' electronic communications in violation of the Electronic Communications Privacy Act;

g. Whether Defendant divulged Plaintiffs' and the Class Members' user data through its participation in real-time bidding auctions;

h. Whether Defendant was unjustly enriched by its conduct; and

i. Whether Defendant obtained consent from Plaintiffs and Class Members.

118. **Typicality:** Plaintiffs' claims are typical of the claims of the Class Members in that Plaintiffs, like all Class Members, have been injured by Defendant's misconduct at issue.

119. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Class. Plaintiffs also have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

120. **Superiority:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

121. Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## TOLLING OF STATUTES OF LIMITATIONS

122. The applicable statutes of limitations have been tolled by MNTN's knowing and active concealment of its data interception and disclosure practices. MNTN's tracking pixel operates invisibly to users, and MNTN does not disclose to website visitors that their communications are being intercepted and transmitted to MNTN's servers. Plaintiffs and Class Members had no way of knowing that MNTN was intercepting their communications until they were informed of it.

123. MNTN's conduct constitutes a continuing violation of the law, and the limitations period has been tolled under the discovery rule because Plaintiffs and Class Members did not discover and could not have discovered through the exercise of reasonable diligence, that MNTN was intercepting and disclosing their communications.

## CAUSES OF ACTION

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## FIRST CAUSE OF ACTION

**Violations of Cal. Penal Code §§ 630, *et seq.***

**(On Behalf of Plaintiffs and the California Sub-Class)**

124. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

125. The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA") "to protect the right of privacy of the people of this state." *Id*. § 630.

126. To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

127. Defendant's software, including its tracking pixel, is a "machine, instrument, contrivance" used to collect communications.

128. When Plaintiffs and California Sub-Class Members communicate with websites by viewing pages, clicking links, browsing content, or completing conversion events, these interactions constitute communications containing content and meaning.

This includes page URLs visited, webpage content accessed, product views, cart activity, conversion events, and user interactions, all of which are "contents" of communications.

129. Defendant's tracking pixels intercept user communications while they are in transit. This interception occurs in real-time as users' communications are being sent to the intended website.

130. Defendant willfully reads, analyzes, and learns the contents and meaning of these intercepted communications without users' knowledge or consent. Defendant uses these intercepted communications to build detailed advertising profiles, support its Verified Visits attribution methodology, provide CTV advertising, targeting, and measurement services, and divulge user data to third parties through its participation in real-time bidding auctions.

131. Plaintiffs and California Sub-Class Members did not consent to Defendant intercepting, reading, or using their communications. No notice was provided, and no opportunity to consent was given before the interceptions began.

132. Defendant uses the intercepted communications for its own commercial purposes and, by doing so, has generated approximately $280 million in annual revenue. This use demonstrates that Defendant is not acting as a mere extension of the websites but as an independent party exploiting intercepted communications.

133. Defendant's systematic interception and use of Plaintiffs' and California Sub-Class Members' communications while in transit violates Cal. Penal Code § 631(a).

134. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the California Sub-Class seek statutory damages of $5,000 per violation and injunctive relief.

## SECOND CAUSE OF ACTION

## Violation of Cal. Penal Code § 638.51

## (On Behalf of Plaintiffs and the California Sub-Class)co

135. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

136. California law prohibits the installation of a pen register without first obtaining a court order. Cal. Penal Code § 638.51.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

137. The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

138. Defendant's tracking pixel technology is a "pen register" because it is a device or process that records addressing or signaling information; in this instance, Plaintiffs' and California Sub-Class Members' IP addresses, the websites they visited, derived location information, device identifiers, Google Analytics user IDs, and other persistent identifiers, from electronic communications transmitted by their devices. Furthermore, Defendant's software is a device or process that identifies consumers, gathers data, and correlates it, building comprehensive profiles of users and their online activities.

139. Defendant was not authorized by any court order to use a pen register to track Plaintiffs' and California Sub-Class Members' IP addresses, location, and personal information, nor did Defendant obtain consent from Plaintiffs and the California Sub-Class to operate such a device.

140. Defendant's systematic recording of Plaintiffs' and California Sub-Class Members' IP addresses and other routing, addressing, and signaling information, without a court order or user consent, violates Cal. Penal Code § 638.51.

141. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the California Sub-Class seek statutory damages of $5,000 per violation and injunctive relief.

## THIRD CAUSE OF ACTION

**Unlawful Recording of and Eavesdropping Upon Confidential Communications**

**Violation of Cal. Penal Code § 632**

**(On Behalf of Plaintiffs and the California Sub-Class)**

142. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

143. California Penal Code § 632 prohibits using "an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication . . . intentionally and without the consent of all parties to a confidential communication."

144. Defendant's tracking pixel technology is an electronic amplifying or recording device for purposes of § 632. The tracking pixel duplicates and records users' interactions in real-time as they navigate webpages, including recording page views, links clicked, products viewed, conversion events, and other browsing activity. The tracking pixel also collects and records information from the browser, such as browser type, operating system, device information, and IP address.

145. Section 632 defines a "confidential communication" to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."

146. Plaintiffs' and California Sub-Class Members' communications with websites deploying MNTN's tracking pixel were confidential communications for purposes of § 632.

147. These communications included sensitive health-related browsing on websites such as lung.org, where users researched COPD, lung biopsies, lung cancer, and smoking cessation; browsing on feedingamerica.org, where users sought food assistance and explored programs for food-insecure individuals; browsing on audienhearing.com, where users researched hearing loss conditions and hearing aid products; and browsing and purchase activity on grubhub.com and maurices.com, revealing granular consumer preferences and lifestyle details —all of which MNTN aggregated across these otherwise unrelated websites into comprehensive cross-site profiles of user's health conditions, financial circumstances, and personal habits.

148. Users reasonably expected these communications to remain between themselves and the websites they chose to visit, not to be secretly recorded by an undisclosed third-party advertising technology company.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

149. Because Defendant did not disclose to Plaintiffs or California Sub-Class Members that their private communications were being recorded and eavesdropped upon by MNTN, Defendant did not obtain, and could not have obtained, Plaintiffs' or California Sub-Class Members' express or implied advance consent to MNTN's recording or monitoring of those communications. As a result, Plaintiffs and California Sub-Class Members had an objectively reasonable expectation that their confidential communications were not being recorded and eavesdropped upon by MNTN.

150. That expectation and its objective reasonableness arise, in part, from: (i) the objective offensiveness of surreptitiously recording and eavesdropping upon people's private communications, particularly those involving sensitive health conditions, food insecurity, granular person habits, and personal medical information; (ii) the ease with which disclosure or a warning could have been provided; and (iii) the absence of any direct relationship between Plaintiffs and California Sub-Class Members and MNTN that would put them on notice of MNTN's involvement.

151. Plaintiffs and California Sub-Class Members expected that their personal and private communications with the websites they visited would not be intercepted and secretly recorded and eavesdropped upon by undisclosed third parties such as MNTN.

152. By deploying tracking pixels on advertiser and partner websites and using that technology to contemporaneously intercept, redirect, and record Plaintiffs' and California Sub-Class Members' confidential communications, Defendant eavesdropped upon and recorded website users' confidential communications through an electronic amplifying or recording device, in violation of § 632.

153. At no time did Plaintiffs or California Sub-Class Members consent to Defendant's unlawful conduct. Nor could Plaintiffs or California Sub-Class Members reasonably expect that their confidential communications with websites such as lung.org, feedingamerica.org, audienhearing.com, grubhub.com and maurices.com would be overheard or recorded by MNTN, an entity with whom they have no relationship and whose existence they were unaware of.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

154. Upon information and belief, Defendant utilized Plaintiffs' and California Sub-Class Members' sensitive personal information, including their health-related browsing activity, for Defendant's own commercial purposes, including building identity profiles, powering cross-device attribution, and generating approximately $280 million in annual revenue.

155. Defendant's intentional eavesdropping upon and recording of Plaintiffs' and California Sub-Class Members' confidential communications, without their consent, violates Cal. Penal Code § 632.

156. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the California Sub-Class seek statutory damages of $5,000 per violation and injunctive relief.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## FOURTH CAUSE OF ACTION

**California Comprehensive Computer Data Access and Fraud Act**

**Violation of Cal. Penal Code § 502**

**(On Behalf of Plaintiffs and the California Sub-Class)**

157. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

158. The California Legislature enacted the Comprehensive Computer Data Access and Fraud Act ("CDAFA") to "expand the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). In enacting the statute, the Legislature emphasized the need to protect individual privacy: "The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals." *Id.*

159. Plaintiffs' and California Sub-Class Members' devices are "computers" or "computer systems" within the meaning of § 502(b) because they are devices capable of being used in conjunction with external files and perform functions such as logic, arithmetic, data storage and retrieval, and communication.

160. Defendant violated the following sections of CDAFA § 502(c):

a. "Knowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data." *Id.* § 502(c)(1).

b. "Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network." *Id.* § 502(c)(2).

c. "Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network." *Id.* § 502(c)(7).

161. Defendant knowingly "accessed" Plaintiffs' and the California Sub-Class Members' computers and/or computer systems because it purposefully gained entry to and/or caused output from their computers to obtain personal information, including browsing data, device identifiers, IP addresses, Google Analytics user IDs, and persistent guid cookies.

162. Plaintiffs and the California Sub-Class suffered damage and/or loss resulting from Defendant's conduct described herein. Specifically: (1) Defendant's software occupied Plaintiffs' and the California Sub-Class's storage space on their devices without authorization; (2) Defendant's software caused data to be sent from Plaintiffs' and the California Sub-Class's devices to MNTN; (3) Defendant's acts used the computer resources on Plaintiffs' devices; and (4) Defendant profited from the data taken from Plaintiffs and the California Sub-Class without their consent and was thus unjustly enriched.

163. Plaintiffs and the California Sub-Class now seek compensatory damages, injunctive relief, disgorgement of profits, other equitable relief, punitive damages, and attorneys' fees pursuant to § 502(e)(1)-(2).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## FIFTH CAUSE OF ACTION

**Invasion of Privacy**

**Violation of Art. 1, § 1 of the California Constitution**

**(On Behalf of Plaintiffs and the California Sub-Class)**

164. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

165. "Privacy" is listed in Article I, Section 1, of the California Constitution as a fundamental right of all Californians. That section of the Constitution provides as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. Art. I, § 1.

166. The right to privacy in California's Constitution creates a right of action against private entities such as Defendant. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

167. Plaintiffs and California Sub-Class Members have a legally protected privacy interest in their IP addresses, location data, browsing activity, and other routing and behavioral information that MNTN captures without notice or consent when they access and view websites implementing MNTN's tracking pixels. These privacy interests are recognized by the California Constitution, CDAFA, and CIPA.

168. Plaintiffs and California Sub-Class Members had a reasonable expectation of privacy concerning this data when navigating the internet. MNTN is a third-party advertising technology company with whom Plaintiffs and California Sub-Class Members have no direct relationship. Nevertheless, MNTN, through its advertiser-installed tracking pixels, collects Plaintiffs' and California Sub-Class Members' IP addresses, page views, browsing history, device information, and other routing information across multiple unrelated websites. MNTN also uses this information to build comprehensive profiles linking their online activities to CTV advertising exposure.

169. The identifiable and private information MNTN intercepted, stored, and used without Plaintiffs' and California Sub-Class Members' consent was used to track them consistently and persistently across multiple websites and devices and to provide targeted CTV advertising, attribution, and measurement services. The manner in which MNTN intercepted this information deliberately circumvented established privacy-protection mechanisms and violated social norms.

170. Defendant's conduct constitutes an extremely serious invasion of privacy that would be highly offensive to a reasonable person because: (i) the information collected by MNTN is personally identifying information protected by the California Constitution and numerous statutes; (ii) MNTN creates comprehensive identity profiles of users by linking their activities across multiple unrelated websites and connecting those profiles to CTV advertising exposure across devices; (iii) Defendant did not have authorization or consent to collect users' IP addresses and other routing information; and (iv) this invasion deprived Plaintiffs and California Sub-Class Members of the ability to control the dissemination and use of their personal information, an ability that is a fundamental privacy right.

171. Reasonable individuals do not expect that there is an entity intercepting and monitoring their personally identifiable online activity across multiple websites, linking that activity to their household's CTV viewing, and using this information for profit through advertising targeting, attribution, and measurement services.

172. Defendant's conduct violated the privacy of hundreds of thousands (if not millions) of California Sub-Class Members, including Plaintiffs. Defendant did not have consent to intercept this information, let alone use and monetize it.

173. As a direct and proximate result of Defendant's actions, Plaintiffs and California Sub-Class Members have had their privacy invaded and have sustained injury, including the loss of control over their personal information.

174. Plaintiffs and California Sub-Class Members seek appropriate relief for those injuries, including but not limited to restitution, disgorgement of profits earned by Defendant because of, by way of, or in connection with the intrusions upon Plaintiffs' and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

California Sub-Class Members' privacy, damages, and all other equitable and/or injunctive relief that will compensate Plaintiffs and California Sub-Class Members properly for the harm to their privacy interests.

175. Plaintiffs also seek such other relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION

**Violation of the Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On Behalf of Plaintiffs and the California Sub-Class)**

176. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

177. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

178. Defendant engaged in unlawful business practices in connection with their unauthorized collection of Plaintiffs' and California Sub-Class Members' private information, in violation of the UCL.

179. The acts, omissions, and conduct of Defendant as alleged herein constitute "business practices" within the meaning of the UCL.

180. Defendant violated the "unlawful" prong of the UCL by violating, inter alia, Plaintiffs' and California Sub-Class Members' constitutional rights to privacy, state privacy statutes, the Electronic Communications Privacy Act, and state consumer protection statutes.

181. Defendant's acts, omissions, and conduct also violate the "unfair" prong of the UCL because those acts, omissions, and conduct, as alleged therein, offended public policy (including state privacy statutes and state consumer protection statutes) and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and California Sub-Class Members.

182. The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct, and there were reasonably available alternatives to further

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Defendant's legitimate business interests other than Defendant's conduct described herein.

183. As a result of Defendant's violations of the UCL, Plaintiffs and California Sub-Class Members have suffered injury in fact and lost money or property, e.g., access to their private and personal data, without receiving any consideration in return. Plaintiffs' and California Sub-Class Members' personal data, including web browsing and device data and personally identifying and addressing information, has monetary value. Defendant deprived Plaintiffs and California Sub-Class Members of that valuable data without providing just compensation. Plaintiffs and California Sub-Class Members would not have used the websites identified herein had they known Defendant was collecting and using their personally identifying and addressing information through those sites for cross-device advertising, attribution, and measurement purposes. Defendant's profits derived from the unauthorized collection, use, and monetization of that data—through its sale, licensing, or use in cross-device advertising, attribution, and measurement products—constitute money that in equity belongs to Plaintiffs and California Sub-Class Members. Defendant should therefore be required to disgorge and restore to Plaintiffs and California Sub-Class Members the profits it unjustly obtained through its unauthorized exploitation of their personal data.

184. UCL § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive, and fraudulent business acts and practices and may order restitution to Plaintiffs. Plaintiffs and California Sub-Class Members are entitled under UCL §§ 17203 and 17208 to restitution and restoration of all property belonging to Plaintiffs and California Sub-Class Members in Defendant's possession and any ill-gotten money Defendant may have obtained by virtue of possessing Plaintiffs' and California Sub-Class Members' property.

185. As a result of Defendant's violations of the UCL, Plaintiffs and California Sub-Class Members are further entitled to injunctive relief enjoining Defendant's unlawful and unfair business activities and practices, including an injunction terminating

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

all further collection and use of Plaintiffs' and California Sub-Class Members' personal data. This is particularly true since the collection and dissemination of Plaintiffs' and California Sub-Class Members' information is ongoing.

186. Plaintiffs additionally seek any and all other equitable relief that the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**

**Common Law Invasion of Privacy – Intrusion Upon Seclusion**

**(On Behalf of Plaintiffs and the California Sub-Class)**

187. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

188. To state a claim for intrusion upon seclusion, Plaintiffs must establish that: (1) the defendant intruded on a place, conversation, or matter in which Plaintiffs had a reasonable expectation of privacy; and (2) the intrusion would be highly offensive to a reasonable person.

189. Defendant's collection, interception, and use of Plaintiffs' and California Sub-Class Members' personally identifiable information, including IP addresses, browsing history, page views, device identifiers, Google Analytics user IDs, and persistent guid cookies, constitute an intentional intrusion. MNTN's use of this information to create detailed identity profiles of individuals through its tracking technology and identity graph, which tracks and profiles Plaintiffs and California Sub-Class Members across multiple unrelated websites and links that activity to CTV advertising exposure, likewise constitutes an intentional intrusion.

190. Plaintiffs and California Sub-Class Members reasonably expected that their IP addresses, location data, communications, personal identifiers, and other personal information would not be intercepted, collected, or used by MNTN, a third-party advertising technology company with whom they have no direct relationship.

191. This expectation is particularly reasonable given that MNTN operates entirely behind the scenes, with no visible interface for users, no direct services provided to users, and no opportunity for users to review or consent to MNTN's privacy practices.

192. The information MNTN collects is especially sensitive because it includes IP addresses (which reveal users' geographic locations), health-related browsing activity (from websites such as lung.org), communications and persistent identifiers, and is used to create comprehensive identity profiles tracking users' activities across multiple unrelated websites and linking those activities to television advertising exposure across devices.

193. Plaintiffs and California Sub-Class Members did not consent to, authorize, or understand MNTN's interception or use of their private data.

194. Defendant's conduct is highly offensive to a reasonable person because: (a) it violates established social norms and expectations regarding online privacy; (b) it occurs without users' knowledge or consent and provides no opportunity for users to opt out; (c) it creates comprehensive identity profiles of users' online activities across multiple unrelated websites and links those profiles to CTV advertising exposure across devices; and (d) it monetizes users' personal information for Defendant's commercial gain without their knowledge or compensation.

195. Defendant's conduct caused Plaintiffs and California Sub-Class Members harm, including a violation of their privacy interests and loss of control over their personal information.

196. Plaintiffs and California Sub-Class Members seek damages to compensate for the harm to their privacy interests, among other damages, as well as disgorgement of profits made by Defendant as a result of its intrusion upon seclusion.

197. Plaintiffs and California Sub-Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiffs and California Sub-Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

198. Plaintiffs and California Sub-Class Members also seek any other relief the Court may deem just and proper.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## EITGTH CAUSE OF ACTION

**Violation of the Electronic Communications Privacy Act**

**18 U.S.C. § 2510, *et seq*.**

**(On Behalf of Plaintiffs and the Class)**

199. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

200. The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a), prohibits any person from intentionally intercepting, or endeavoring to intercept, any wire, oral, or electronic communication.

201. The ECPA also prohibits any person from "intentionally us[ng], or endeavor[ing] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(d).

202. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire, oral, or electronic communication is intercepted or used in violation of 18 U.S.C § 2511.

203. MNTN intentionally captures the contents of users' interactions with websites across the internet and purposefully transmit them to MNTN's servers.

204. Defendant knowingly and intentionally distributes and maintains its tracking technologies to its partners for the purpose of rerouting user communications to the its servers for Defendant's later use.

205. MNTN's tracking code executed automatically within Plaintiffs' and Class members' browsers during the page load process without their consent.

206. This code intercepted the contents of Plaintiffs' and the Class members' interactions with various by rerouting their communications to MNTN.

207. These interceptions occurred as part of the browser's rendering of the websites, before Plaintiffs or members of the Class could detect the transmissions or consent to the transmissions.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

208. When Plaintiffs and the Class members navigate websites containing MNTN's tracking technologies, their code causes their browsers to transmit IP addresses, identifiers, full URLs, page titles, and other communications related to Plaintiffs and the Class members in real time.

209. These transmissions occur without the user's awareness or consent and are initiated automatically during the same browser session in which the user communicates with a website.

210. MNTN's capture and use of these communications constitutes unlawful interception and use under the ECPA

211. Plaintiffs' and Class Members' communications with websites where MNTN's tracking pixel was deployed constituted "electronic communications" within the meaning of 18 U.S.C. § 2510(12), as they involved the transfer of signs, signals, data, and intelligence transmitted in whole or in part by a wire, radio, electromagnetic, or other means affecting interstate commerce.

212. MNTN's technologies used to intercept this data—including but not necessarily limited to web beacons, pixels, software development kits, APIs, JavaScript, real-time bidding and other scripts, and cookies—constitute an "electronic, mechanical, or other device" within the meaning of 18 U.S.C. § 2510(5) that was specifically designed and deployed to intercept electronic communications.

213. MNTN, through the tracking pixel it deployed on websites including lung.org, feedingamerica.org, audienhearing.com, kqed.org, grubhub.com, and maurices.com, contemporaneously and intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications while those communications were in transmission and redirected such contents to MNTN's servers. These communications include full-string URLs and identifiers. These qualify as the "contents" of a communication under 18 U.S.C. § 2510(8) because they reveal the substance and subject matter of the user's communications with the website.

214. MNTN intentionally intercepted and used the contents of Plaintiffs' and Class Members' electronic communications for unauthorized purposes including profiting from Plaintiffs' and Class Members' communications by using the intercepted data to build and enhance its identity graph, optimize its CTV advertising platform, improve its Verified Visits attribution system, and divulge user data through real-time bidding auctions.

215. Plaintiffs and Class Members did not authorize MNTN to acquire the content of their communications for purposes of CTV advertising attribution, identity resolution, real-time bidding, or any other commercial purpose.

216. As a direct and proximate result of MNTN's violation of the ECPA, Plaintiffs and Class Members were damaged in that MNTN harmed their interest in privacy, information they intended to remain private is no longer confidential, MNTN took something of value from them and derived benefit therefrom without their authorization, and MNTN's actions diminished the value of their personal information.

217. MNTN's interceptions were also knowingly and intentionally performed for the independent purpose of committing tortious acts in violation of common law, specifically:

a. Violating Plaintiffs' and the class members' right to privacy through the creation and dissemination of highly detailed identity profiles, enriched by the contents of Plaintiffs' and the class members' communications intercepted by MNTN, as described herein; and

b. Committing the tort of intrusion upon seclusion by using the contents of the intercepted communications to facilitate the creation of highly detailed identity profiles on Plaintiffs and class members, which were then used and disseminated as described herein.

218. Because MNTN intentionally and knowingly intercepted and disclosed, and intentionally and knowingly used Plaintiffs' and class members' communications for the

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

purpose of committing these criminal and tortious acts, it is not shielded by the "party exception" under the ECPA.

219. Plaintiffs, individually and on behalf of the Class, seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages, punitive damages, preliminary and other equitable or declaratory relief, and attorneys' fees and costs pursuant to 18 U.S.C. § 2520.

**NINTH CAUSE OF ACTION**

**Unjust Enrichment**

**(On Behalf of Plaintiffs and the Class)**

220. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

221. MNTN has wrongfully and unlawfully intercepted and used Plaintiffs' and Class Members' personal information, including browsing behavior, product interests, purchase data, and personal identifiers, for commercial gain without consent.

222. MNTN has been unjustly enriched at the expense of Plaintiffs and Class Members by profiting from the unauthorized interception and disclosure of their personal information. MNTN uses the intercepted data to build and maintain its identity graph, power its CTV advertising platform, and generate revenue from advertising attribution and real-time bidding participation.

223. It would be unjust and inequitable to permit MNTN to retain the benefits it has derived from its wrongful conduct. Plaintiffs and Class Members are entitled to restitution and disgorgement of MNTN's unjust enrichment.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Crystal Tuthill, Gregory Urrutia, Ted Lukowski, Patti Rider, and Paul Stephens, individually and on behalf of the Class and California Sub-Class, pray for the following relief:

a. An order certifying the Class and California Sub-Class as defined above, appointing Crystal Tuthill, Gregory Urrutia, Ted Lukowski,

Patti Rider, and Paul Stephens as the representatives of the Class, and appointing their counsel as Class Counsel;

b. An order declaring that Defendant's actions, as set out above, violate Cal. Penal Code § 631, Cal. Penal Code § 638.51, Cal. Penal Code § 632, Cal. Penal Code § 502, Art. 1, § 1 of the California Constitution, Cal. Bus. & Prof. Code § 17200, and the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*., constitute a common law invasion of privacy, and have unjustly enriched Defendant;

c. An injunction requiring Defendant to cease all unlawful activities, including, but not limited to, an injunction terminating all further collection, use, and disclosure of Plaintiffs' and Class Members' personal data;

d. An award of actual, statutory, and punitive damages, restitution, disgorgement of profits, costs, and attorneys' fees; and

e. Such other and further relief that the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: August 6, 2026

/s/ *Amber L. Schubert*

Amber L. Schubert (No. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
aschubert@sjk.law

Fletcher V. Trammell* (TX Bar No. 24042053)
**TRAMMELL PC**
3262 Westheimer, #423

Houston, TX 77098
Tel: (800) 405-1740
Fax: (800) 532-0992
fletch@trammellpc.com

Don Bivens*
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Tel: (602) 762-2661
don@donbivens.com

Victor J. Sandoval (No. 344461)
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd., Suite 1121
Los Angeles, CA 90066
Tel: (562) 534-5907
victor@almeidalawgroup.com

David S. Almeida*
Lucas A. Coughlin*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: 708-529-5418
david@almeidalawgroup.com
lucas@almeidalawgroup.com

* *Pro hac vice forthcoming*

*Counsel for Plaintiffs & the Proposed Classes*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220